**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **KIMBERLY G.K.,** | : | **CIVIL ACTION** |
| **Plaintiff,** | : | |
| | : | |
| **vs.** | : | **NO. 25-cv-2984** |
| | : | |
| **FRANK BISIGNANO,** | : | |
| **Commissioner of Social Security,** | : | |
| **Defendant.** | : | |

**MEMORANDUM OPINION**

**LYNNE A. SITARSKI**
**UNITED STATES MAGISTRATE JUDGE** **October 20, 2026**

Plaintiff Kimberly G.K. brought this action seeking review of the Commissioner of Social Security Administration's decision denying her claim for Social Security Disability Insurance (SSDI) benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. This matter is before me for disposition upon consent of the parties. For the reasons set forth below, Plaintiff's Request for Review (ECF No. 14) is **GRANTED**, and the matter is remanded for further proceedings consistent with this memorandum.

## I. PROCEDURAL HISTORY

On October 13, 2022, Plaintiff protectively filed for SSDI, alleging disability since January 30, 2019, due to systemic lupus, bilateral carpal tunnel syndrome, vitamin D deficiency, depression and anxiety. (R. 238-44, 263, 266). Plaintiff's application was denied at the initial level on June 9, 2023, and upon reconsideration on September 8, 2023, and Plaintiff requested a hearing before an Administrative Law Judge (ALJ). (R. 90, 96, 100). Plaintiff, represented by counsel, and a vocational expert (VE) testified at the May 14, 2024, administrative hearing. (R. 34-55). On June 13, 2024, the ALJ issued a decision unfavorable to Plaintiff. (R. 15-33).

Plaintiff appealed the ALJ's decision, but the Appeals Council denied Plaintiff's request for review on April 25, 2025, thus making the ALJ's decision the final decision of the Commissioner for purposes of judicial review. (R. 1-6).

On June 11, 2025, Plaintiff filed a complaint in the United States District Court for the Eastern District of Pennsylvania. (Compl., ECF No. 1). Plaintiff consented five days later to my jurisdiction pursuant to 28 U.S.C. § 636(C). (Consent, ECF No. 5). On December 8, 2025, Plaintiff filed a Brief and Statement of Issues in Support of Request for Review. (Pl.'s Br., ECF No. 14). The Commissioner responded on January 7, 2026, and on January 20, 2026, Plaintiff filed a reply. (Resp., ECF No. 15; Reply, ECF No. 16).

## II. FACTUAL BACKGROUND

The Court has considered the administrative record in its entirety and summarizes here the evidence relevant to the instant request for review.[1]

### A. Medical Evidence

Plaintiff was born on January 31, 1976, and was 43 years old on the alleged disability onset date. (R. 263). She completed college and previously worked as a human relations representative. (R. 267).

At her July 14, 2022, consultative psychological examination, Plaintiff reported to Martha Diprinzo, M.A., Psy.D., that her psychiatric treatment history consisted of an initial intake appointment and one follow-up appointment in 2021, although she was "in the process of scheduling both ongoing psychiatric and therapy services." (R. 641). She further indicated that she suffered from anxiety due to her father's recent passing, frequent depression with dysphoria,

[1] Because Plaintiff's request for review implicates only her mental impairments, the Court does not summarize the evidence regarding her physical ones.

crying spells, hopelessness, anhedonia, irritability, social self-isolation, excessive worry, restlessness, intrusive thoughts, sleep disturbances and difficulties with concentration, organization, and planning, although she denied suicidal or homicidal ideation, phobias, panic attacks, and mania. (*Id.*). Upon examination, her appearance, speech, thought processes, attention and concentration, and cognitive functioning were normal, but she was in an anxious and sad mood with a flat, restricted, and tearful affect. (R. 642). She demonstrated fair insight and judgment and mildly impaired memory, "likely due to anxiety and depression." (R. 642-43).

In the attached Medical Source Statement of Ability to Do Work-related Activities (Mental), Dr. Diprinzo recorded that due to Plaintiff's anxiety and depression she had difficulties focusing and concentrating and had mild limitations in understanding, remembering and carrying out simple instructions, making judgments on simple work-related decisions, responding appropriately to usual work situations and to changes in routine, and interacting with the public, supervisors, and coworkers and moderate limitations in making judgments on complex work-related decisions and understanding, remembering and carrying out complex instructions. (R. 644-45).

On June 9, 2023, State agency psychological consultant Melissa Franks, Psy.D., opined that Plaintiff had mild limitations in understanding, remembering or applying information and adapting or managing herself and moderate limitations in interacting with others and concentrating, persisting or maintaining pace. (R. 64). Upon reconsideration, on September 7, 2023, State agency psychological consultant Taylor Saunders, Psy.D., affirmed these findings. (R. 177).

At the June 1, 2023, consultative psychological examination, Plaintiff reported to Ellen Foster, Psy.D., that she stopped working for medical reasons, such as fatigue, headaches and loss of use of her hands. (R. 1232). She added that her mental health treatment consisted of three

Telemed therapists visits in 2021 and 2022 and eight weeks of grief and group counseling in 2021 after her father died. (R. 1233). She described many of the same symptoms as she had previously related to Dr. Diprinzo, as well as loss of energy and motivation, stress from not working, word-finding deficits, and memory problems. (*Id.*). Upon examination, her appearance, speech, thought processes, attention and concentration, and cognitive functioning were normal or better, but she was in a dysthymic and overwhelmed mood with a tearful and depressed affect. (R. 1234). She demonstrated fair judgment and good insight, albeit with mildly impaired memory, "due to emotional distress secondary to anxiety and depression." (*Id.*). In the attached Medical Source Statement of Ability to Do Work-related Activities (Mental), Dr. Foster recorded that due to Plaintiff's anxiety and depression she had moderate limitations in all areas mental functioning. (R. 1236-37).

**B. Non-medical Evidence**

The record also contains non-medical evidence. In Plaintiff's December 3, 2022, Adult Function Report, she reported that she could not work due to medical issues and described primarily physical problems. (R. 274-80). However, she also endorsed difficulties with memory, completing tasks, concentration, understanding, and following instructions, particularly oral ones. (R. 279). Additionally, she related that she becomes anxious when subjected to stress and that she had become distrustful and pessimistic. (R. 280). Her activities of daily living (ADLs) included caring for four school-aged children, managing money, occasionally socializing in person or on the phone, and watching television. (R. 275, 277).

In a second Adult Function Report dated August 17, 2023, Plaintiff also reported that she could not work due to medical conditions and described mostly physical limitations, although she again noted problems with memory, completing tasks, concentration, oral instructions, and stress. (R. 297-304). She added that she handles changes in routine "reluctantly." (R. 303). She

also elaborated that her children are television and movie actors and that she accompanies them to sets for filming. (R. 301).

At the May 14, 2024, administrative hearing, Plaintiff testified primarily to physical issues. (R. 6-16). As for mental problems, she stated that she had depressive thoughts on a prior medicine, but that she did not "feel much of those symptoms" with her current one. (R. 49). When asked how her "depression" and "anxiety" were affecting her, she responded, "Not as much. Again I go and I would take the medicine to make me feel all right. So it's up and down. I'm always uneasy because of what I'm going through." (R. 49-50).

## III. ALJ'S DECISION

Following the administrative hearing, the ALJ issued a decision in which he made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2024.
2. The claimant has not engaged in substantial gainful activity since January 30, 2019, the alleged onset date (20 CFR 404.1571 *et seq.*).
3. The claimant has the following severe impairments: lupus and history of carpal tunnel syndrome (20 CFR 404.1520(c)).
4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except can lift, carry, push or pull ten pounds frequently,

twenty pounds occasionally; can sit without restriction; can walk a total of two hours per workday but not more than thirty minutes at a time; can stand a total of two hours but not more than thirty minutes at a time; and can frequently handle, finger and feel bilaterally.

6. The claimant is capable of performing past relevant work as a human resource assistant. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7. The claimant has not been under a disability, as defined in the Social Security Act, from January 30, 2019, through the date of this decision through the date of this decision (20 CFR 404.1520(f)).

(R. 18-27). Accordingly, the ALJ found Plaintiff was not disabled. (R. 27).

## IV. LEGAL STANDARD

To be eligible for benefits under the Social Security Act, a claimant must demonstrate to the Commissioner that he or she cannot engage in substantial gainful activity because of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least 12 months. 42 U.S.C. § 1382c(a)(3)(A). A five-step sequential analysis is used to evaluate a disability claim:

> First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. If she is not, then the Commissioner considers in the second step whether the claimant has a "severe impairment" that significantly limits her physical or mental ability to perform basic work activities. If the claimant suffers a severe impairment, the third inquiry is whether, based on the medical evidence, the impairment meets the criteria of the impairment listed in the "listing of impairments," . . . which result in a presumption of disability, or whether the claimant retains the capacity to work. If the impairment does not meet the criteria for a listed impairment, then the Commissioner assesses in the fourth step whether, despite the severe impairment, the claimant has the

> residual functional capacity to perform her past work. If the claimant cannot perform her past work, then the final step is to determine whether there is other work in the national economy that the claimant can perform.

*Sykes v. Apfel*, 228 F.3d 259, 262-63 (3d Cir. 2000); *see also* 20 C.F.R. § 404.1520(a)(4). The disability claimant bears the burden of establishing steps one through four. If the claimant is determined to be unable to resume previous employment, the burden shifts to the Commissioner at step five to establish that, given the claimant's age, education, work experience, and mental and physical limitations, he is able to perform substantial gainful activities in jobs existing in the national economy. *Poulos v. Comm'r. of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007).

Judicial review of a final decision of the Commissioner is limited. A district court is bound by the factual findings of the Commissioner if they are supported by substantial evidence and decided according to correct legal standards. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). Substantial evidence is "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate." *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 118 (3d Cir. 2000) (citations omitted). Even if the record could support a contrary conclusion, the decision of the ALJ will not be overruled as long as there is substantial evidence to support it. *Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986). The court has plenary review of legal issues. *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999).

## V. DISCUSSION

In her request for review, Plaintiff raises three[2] claims:

> (1) The ALJ . . . erred failing to incorporate restrictions consistent with his findings at Step 2, or alternatively,

[2] Plaintiff initially nests her first two issues within a single heading but then argues each under separate subheadings. (Pl.'s Br., ECF No. 14, at 6-10). The Court agrees that these issues are distinct and therefore lists and considers them separately herein.

explain the absence of mental health limitations within the RFC determination.

(2) The ALJ erred by rejecting every mental health opinion of record without adhering to the regulatory framework.

(3) The majority of the jobs identified by the Vocational Expert at Step 5, and relied upon by the ALJ, are obsolete. The other job identified would be precluded if Plaintiff were found limited consistent with the mental health opinion evidence discussed *supra*.

(Pl.'s Br., ECF No. 14, at 6-16) (reordered).

**A. Non-inclusion of Mental Limitations in RFC and Failure to Explain Their Absence**

Plaintiff asserts that the ALJ failed to account for her mental limitations in his formulation of her RFC or otherwise explain their absence. (Pl.'s Br., ECF No. 14, at 10-22). After concluding that Plaintiff had no or only mild limitations in the four areas of mental functioning (i.e., those addressed in the State agency administrative findings), the ALJ stated at the close of his step two analysis that these limitations "are not a residual functional capacity assessment," which would "require[ ] a more detailed assessment" at steps four and five, and that "[t]he following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the 'paragraph B' mental function analysis." (R. 22).

In determining the RFC, the ALJ addressed the mental health evidence as follows:

> Melissa Lynn Franks, Psy.D and Taylor Saunders, Psy.D, State agency psychological consultants opined in June 2023 and September 2023, respectively, that the claimant had mild to moderate limitations in the B criteria and that the claimant was able to perform simple and routine tasks (Ex. 1A; 3A). The undersigned finds these opinions are not persuasive because they are not consistent with the claimant's treatment records, which fail to document any mental health treatment during the period at issue.
>
> Martha Diprinzo, MA Psy.D., a State agency consultative examiner, opined in July 2022 that the claimant has no more than moderate limitations in the ability to understand, remember, and carry out complex instructions, and to make judgments on complex

> work-related decisions (Ex. 12F). The examiner further opined that the claimant had no more than mild limitations in the ability to interact appropriately with the public, supervisors, and co-workers, and in the ability to respond appropriately to usual work situations and changes in routine work setting. The undersigned finds this opinion is not persuasive because is not consistent with the claimant's treatment records, which fail to document any mental health treatment during the period at issue.
>
> Ellen Foster, PsyD., a State agency consultative examiner, opined in June 2023 that the claimant has no more than moderate limitations in the ability to understand, remember, and carry out simple instructions, and to make judgments on simple work-related decisions (Ex. 24F). The examiner further opined that the claimant had no more than moderate limitations in the ability to interact appropriately with the public, supervisors, and co-workers, and in the ability to respond appropriately to usual work situations and changes in routine work setting. The undersigned finds this opinion is not persuasive because [it] is not consistent with her examination findings, including only mildly impaired memory and intact attention and concentration (Ex. 24F/3). It is also inconsistent with the claimant's treatment records, which fail to document any mental health treatment during the period at issue.

(R. 25-26).

The assessment did not discuss any other evidence regarding Plaintiff's mental health (aside from a passing reference to her Adult Function Report claim that "some of her medications caused depressive thoughts"), and it did not state how, if at all, the mild limitations found at step two had been addressed. (R. 23-26). The RFC itself included no mental limitations. (R. 22-23).

**1. The Parties' Positions**

After setting forth the applicable background law, Plaintiff observes that the ALJ's decision omits any analysis of her mental limitations after step two, although the "Applicable Law" section specifies that even non-severe impairments must be considered in determining the RFC. (Pl.'s Br., ECF No. 14, at 11 (citing 20 C.F.R. Part 404, Subpt. P, App. 1, § 12.00(A); SSR 96-8p; R. 19)). Furthermore, she notes that despite rating the four areas of mental functioning

pursuant to "paragraph B," the ALJ never performed the promised "more detailed" assessment at steps four and five and failed to analyze how the step two findings resulted in an ability to maintain full-time work. (*Id.* (citing SSR 85-16)). Citing my decision in *Gunn v. Kijakazi* collecting cases from this district holding that even mild mental limitations at step two must be addressed in the RFC assessment, Plaintiff maintains that the only sentence that possibly does so here is the ALJ's boilerplate declaration that the RFC "reflects the degree of limitation the undersigned has found in the 'paragraph B' mental functional analysis," but after a close review of the relevant law the *Gunn* decision rejected that language as insufficient and required that, at a minimum, the omission must be explained. (*Id.* at 11-12 (citing 705 F. Supp. 3d 316, 331 (E.D. Pa. 2023))). She insists that, as in *Gunn*, the ALJ's error warrants remand. (*Id.* at 12).

The Commissioner also sets forth the background law but posits that the ALJ's decision reflects "more than adequate reasoning" for omitting any mental restrictions in the RFC, especially given that the ALJ is not required to include corresponding restrictions where the claimant is assessed only "mild" mental limitations, as here. (Resp., ECF No. 15, at 5-6 (citations omitted)). He highlights two cases specifically. First, the Commissioner emphasizes that in *Hess v. Commissioner of Social Security* the Third Circuit Court of Appeals refused to require that even moderate paragraph "B" limitations be included in the RFC and, moreover, rejected the need for "the use of any particular language," instead allowing for "a wide range of limitation language . . . , regardless of what the ALJ found at earlier steps of the analysis, so long as the chosen limitations language is explained." (*Id.* at 6 n.2 (citing 931 F.3d 198, 209 (3d Cir. 2019))).

Next, he claims that this case is factually similar to *Northrup v. Kijakazi*, No. 1:20-CV-00412, 2022 WL889968 (M.D. Pa. Mar. 24, 2022), where the ALJ also determined that the claimant had at most mild limitations in the four areas of mental functioning, making his

underlying impairments "non-severe," and further explained, as here, that although the paragraph "B" analysis was not an RFC assessment, the subsequent assessment nonetheless "reflect[ed] the degree of limitation" that the ALJ had found in that earlier analysis. (*Id.* at 7 (citing *Northrup*, 2022 WL889968, at *4)). The *Northrup* court determined that this language sufficed to confirm that the ALJ had considered the claimant's mental impairments prior to formulating the RFC. (*Id.* at 7 (citing *Northrup*, 2022 WL 889968, at *5)). The Commissioner maintains that despite the ALJ's use of language held compliant in *Northrup*, Plaintiff nonetheless asks that "some other nebulous limitation" be included in her RFC. (*Id.* at 8). However, he suggests that the RFC is well-supported as-is, given the ALJ's observation that Plaintiff had received no inpatient or ongoing outpatient mental health treatment. (*Id.* (citing R. 21)). He also points to largely unremarkable consultative examinations and Plaintiff's ability to complete different ADLs, like managing money and socializing with friends. (*Id.* (citing R. 275, 277, 300, 643, 1214, 1234)).

Plaintiff replies that in *Gunn* this Court held the language at issue here and in the non-binding *Northrup* decision insufficient under *Hess*, as well as SSR 96-8p. (Reply, ECF No. 16, at 3 (citations omitted)). She adds that other courts, relying on *Gunn*, have reached the same conclusion and urges me to follow this precedent, particularly since the Commissioner presents no novel arguments previously unaddressed in these cases. (*Id.* at 3 (citing *Lesko v. Comm'r, Soc. Sec. Admin.*, No. 2:24-CV-01660-CBB, 2025 WL 3677017, at *8 (W.D. Pa. Dec. 18, 2025))). She also dismisses the Commissioner's proffered reasons for rejecting any mental restrictions, not present in the ALJ's decision, as improper post-hoc rationalizations. (*Id.* (citing *Khal v. Kijakazi*, No. 22-CV-1662, 2023 WL 4546497, at *5 (E.D. Pa. July 13, 2023))).

**2. Discussion**

As this Court observed in *Gunn*, a mound of authority supports Plaintiff's position that an ALJ must account for even mild mental limitations when formulating the RFC. Starting with the

regulations, 20 C.F.R. § 404.1545(a)(2) requires the ALJ to "consider all . . . medically determinable impairments of which [he or she is] aware, including . . . medically determinable impairments that are not 'severe.'" 20 C.F.R. § 404.1545(a)(2). SSR 96-8p and Program Operations Manual System – Disability Insurance (POMS DI) 24510.006 add:

> The adjudicator must remember that the limitations identified in the "paragraph B" and "paragraph C" criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process. The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments, and summarized on the [Psychiatric Review Technique Form].
>
> . . . .
>
> In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.' While a 'not severe' impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may—when considered with limitations or restrictions due to other impairments—be critical to the outcome of a claim. For example, in combination with limitations imposed by an individual's other impairments, the limitations due to such a 'not severe' impairment may prevent an individual from performing past relevant work or may narrow the range of other work that the individual may still be able to do.

SSR 96-8p, 1996 WL 374184, at *4-5; *see also* POMS DI 24510.006(C)(4)-(5) (same except for emphasizing that "**all**" limitations and restrictions must be considered).

In *Wells v. Colvin*, the Tenth Circuit Court of Appeals, still apparently the only circuit court to directly address the issue, endorsed the position asserted by Plaintiff here. 727 F.3d 1061, 1068-71 (10th Cir. 2013). Quoting and citing the foregoing authorities, it observed that "a conclusion that the claimant's mental impairments are non-severe at step two does not permit the ALJ simply to disregard those impairments when assessing a claimant's RFC and making conclusions at steps four and five." *Id.* at 1068-69. It held "inadequate" the statement of the ALJ

at step two that his finding of only non-severe mental impairments did "not result in further limitations in work-related functions in the [RFC] assessment below" because it suggested that he may have relied upon this step two finding to conclude that the claimant had no RFC limitations resulting from her mental impairments. *Id.* at 1069. The court continued that the ALJ's separate discussion of the claimant's mental impairments when assessing her credibility as part of the RFC determination, "though far from comprehensive," nonetheless "might" have fulfilled the step four duty to assess her job functionality in detail, but the conclusions reached by the ALJ lacked supporting substantial evidence. *Id.* at 1069-71. Thus, it remanded the case for further analysis of the claimant's mental impairments at steps four and five. *Id.* at 1071.

In addition, "judges in this District have consistently held that even mild limitations in the relevant domains of mental functioning must be included in an RFC assessment and hypothetical question posed to the VE that the ALJ relies upon." *Meersand v. Kijakazi*, No. 20-1084, 2021 WL 5003331, at *3 (E.D. Pa. Oct. 28, 2021) (citing *Benedetto v. Saul*, 2020 WL 5763551, *6-7 (E.D. Pa. Sept. 28, 2020); *Hefferan v. Berryhill*, No. 17-2720 (E.D. Pa. Apr. 5, 2018); *Kennedy v. Berryhill*, Civil No. 16-5478 (E.D. Pa. Jan. 23, 2018); *Metelli v. Berryhill*, 2017 WL 2570913, *1 (E.D. Pa. June 13, 2017); *Savage v. Berryhill*, No. 17-2548 (E.D. Pa. Jan. 17, 2018); *Metelli v. Berryhill*, 2017 WL 2570913, *1 (E.D. Pa. June 13, 2017); *Green v. Colvin*, 179 F. Supp. 3d 481, 486 (E.D. Pa. 2016); *Curran v. Astrue*, 2021 WL 5494616, *5 (E.D. Pa. Nov. 13, 2012); *Harman v. Astrue*, 2012 WL 94617, *2 (E.D. Pa. Jan. 11, 2012); *Washington v. Astrue*, 2009 WL 855893, *1-2 (E.D. Pa. Mar. 31, 2009)); *see also Balla v. Comm'r of Soc. Sec.*, No. 18-00386, 2019 WL 2482661, at *3 (D.N.J. June 14, 2019) ("passing reference" to mild mental limitations during discussion of State agency psychological experts' opinions was insufficient because even though the impairments might impose only "*de minimis*" limitations or "require minor modifications," it was not up to the court to "independently make" those findings) (citing and

quoting *Curry v. Comm'r of Soc. Sec.*, No. 15-cv-07515, 2017 WL 825196, at *4-6 (D.N.J. Mar. 2, 2017)); *Curry*, 2017 WL 825196, at *4-6 (same; mix of mild and moderate limitations); *Kich v. Colvin*, 218 F. Supp. 3d 342, 357 (M.D. Pa. Nov. 2, 2016) (remanding ALJ decision that "made no explicit finding that the deficiencies were so minimal that they would not limit Plaintiff's ability to perform simple tasks," even though the ALJ determined that she would have only mild limitations if she stopped her alcohol use).

Of this substantial body of authority, the Commissioner says nothing. (Resp., ECF No. 15, at 5-8). Nonetheless, his position is not without its own support. As he observes, "[n]umerous courts within this Circuit have found that there is no legal requirement that a mild limitation mandates a corresponding RFC limitation." (*Id.* at 6-7 (quoting *Silbaugh v. Saul*, No. 4:19-CV-1394, 2020 WL 5034140, at *9 (M.D. Pa. July 31, 2020); citing *Long v. Kijakazi*, No. CV20-1358-MN, 2022 WL 609620, at *6 (D. Del. Jan. 31, 2022))). And as he stresses at length, *Northrup* approved language, like that in the ALJ's decision here, that the RFC assessment "reflects" the limitations determined in paragraph B. (*Id.* at 7-8 (citing 2022 WL889968, at *4-5)); *see also Brumfeld v. Saul*, No. 19-4555, 2020 WL 4934315 (E.D. Pa. Aug. 21, 2020) (same). Other uncited authority arguably supports his position as well. *See, e.g., D.C. v. Comm'r of Soc. Sec.*, No. 20-2484, 2021 WL 1851830, at *5-6 (D.N.J. May 10, 2021) (finding that an "in-depth analysis" of mild mental limitations was not required, expressing doubt that the failure to analyze them constituted reversible error, and finding that any error did not warrant reversal because an ALJ need not include "minimal or negligible" limitations in the RFC) (quoting *Makowski v. Comm'r of Soc. Sec.*, No. CV 16-1656, 2017 WL 3151243, at *7 (D.N.J. July 24, 2017)).

The question in this case, as in *Gunn*, boils down to what constitutes a "valid explanation" for the omission of any mental limitations in the RFC or associated hypothetical. *See Hess*, 931 F.3d at 213-14; *Ramirez*, 372 F.3d at 555. Although not dealing with mild mental

impairments, in *Ramirez* the Third Circuit explained that findings of limitation in the broad functional areas play a role in steps four and five and thus need to be accounted for in the RFC and hypothetical to the VE or "a valid explanation for th[eir] omission provided," despite the fact that they are not themselves part of the RFC assessment. 372 F.3d at 555.

This Court remains unconvinced that a statement by the ALJ at step two that the RFC set forth later in the decision reflects the limitations found in the paragraph B mental functional analysis – like the one here and in *Northrup* – passes muster. Such a statement is the functional equivalent of the one held insufficient in *Wells* that the finding of only non-severe mental impairments did "not result in further limitations in work-related functions in the [RFC] assessment below," which the Tenth Circuit rejected on the basis that it indicated that the ALJ possibly relied upon this step two conclusion in finding that the claimant had no mentally-based RFC limitations. 727 F.3d at 1069.

In *Patricia C. v. Saul*, the United States District Court for the Southern District of California expounded upon why such a statement is deficient:

> Despite this acknowledgement [that the limitations identified at paragraph B are not an RFC assessment] and despite his recognition that the mental RFC assessment "requires a more detailed assessment" than that made at Step Two, the ALJ's discussion of Plaintiff's RFC contains no analysis of Plaintiff's mild mental limitations. Instead, the ALJ stated simply that "[t]he analysis of the claimant's nonsevere impairments, *supra*, is incorporated by reference herein." (AR 20.) By incorporating the same Step Two severity assessment into the RFC assessment, the ALJ inarguably did not make "a more detailed assessment." Further, the ALJ's "boilerplate assertion . . . that his RFC assessment 'reflects the degree of limitation the undersigned has found in the "paragraph B" mental function analysis' was not sufficient." *See Uranna G.*, 2019 WL 5342537, at *4. The ALJ does not articulate why, after finding that Plaintiff had mild mental limitations in each of the four broad categories, he did not include any restrictions related to those limitations in the RFC. The Court will not infer in a vacuum that the ALJ considered Plaintiff's mild mental limitations but then validly concluded that they did not cause any significant limitation necessitating inclusion in the RFC.

> *See Gates v. Berryhill*, No. ED CV 16–00049 AFM, 2017 WL 2174401, at *3 (C.D. Cal. May 16, 2017) (rejecting the Commissioner's argument that one can "infer" that the ALJ considered plaintiff's mild mental limitations as inconsistent with *Hutton* [*v. Astrue*, 491 F. App'x 850 (9th Cir. 2012).)].

2020 WL 4596757, at *13 (S.D. Cal. Aug. 11, 2020).

In reaching its decision, the Court is mindful that *Wells* and *Patricia C.* are not binding authority, but neither is *Northrup*. The remaining cases relied upon by the Acting Commissioner, also non-binding, are merely offered for the uncontroverted proposition that a mild mental limitation at step two need not *result* in a corresponding mental limitation in the RFC. *See Long*, 2022 WL 609620, at *6; *Silbaugh*, 2020 WL 5034140, at *9; *see also D.C.*, 2021 WL 1851830, at *5-6. But even these cases require the ALJ to "consider" the step two findings during the formulation of the RFC. *See Long*, 2022 WL 609620, at *6; *D.C.*, 2021 WL 1851830, at *5-6.

In short, as this Court held in *Gunn*,[3] a boilerplate statement at step two that the ensuing RFC assessment "reflects" the limitations determined at step two, with no further discussion of those limitations (except to the extent they match the limitations noted in the required discussion of the State agency psychological consultants' administrative findings) is not the "valid explanation" required by Third Circuit case law or the "detailed assessment" required by SSR 96-8p.[4] *See Hess*, 931 F.3d at 213-14; *Ramirez*, 372 F.3d at 555; SSR 96-8p, 1996 WL 374184,

---

[3] The Court notes that since this decision in 2023, most of the courts to have considered it have agreed with it. *See, e.g., Tracy P. v. Bisignano*, No. 25cv3379, 2026 WL 2655040, at *6-7 (D.N.J. Sept. 9, 2026); *Lesko*, 2025 WL 3677017, at *7-8; *Siry v. Bisignano*, No. 24-1910, 2025 WL 2447786, at *4 (E.D. Pa. Aug. 25, 2025); *Stephen M. v. Bisignano*, No. 25cv02736, 2026 WL 1847244, at *9 (D.N.J. Jan. 26, 2026); *Elizabeth K. v. Bisignano*, No. 25cv10296, 2026 WL 1602120, at *9 (D.N.J. June 4, 2026); *Watson v. Bisignano*, No. 4:25-CV-450, 2026 WL 2001189, at *10 (M.D. Pa. Feb. 18, 2026). *But see Tracy P. v. Bisignano*, No. 24-2936, 2026 WL 1679176, at *6-7 (E.D. Pa. June 10, 2026) (citing *Jennifer J. v. Bisignano*, No. 24-1863, 2025 WL 1435628, at *6 (E.D. Pa. May 19, 2025)); *Jennifer J.*, 2025 WL 1435628, at *6 (incorrectly claiming that *Gunn* "omits any citation to Hess or discussion of its implications").

[4] To the extent that the Commissioner suggests that the ALJ's reliance on Plaintiff's limited mental health treatment somehow excuses his failure during the formulation of the RFC

at *5. It is inconsistent with regulations requiring the ALJ when formulating the RFC to "consider" *all* impairments, even non-severe ones, and at odds with the only circuit-level decision addressing the viability of such a statement. *See* 20 C.F.R. § 404.1545(a)(2); *Wells*, 727 F.3d at 1068-71. On remand, the ALJ may determine that Plaintiff's mild mental limitations warrant only "*de minimis*" or even no corresponding restrictions in the RFC, but it is not the province of the Court to make that determination here. *Balla*, 2019 WL 2482661, at *3; *Curry*, 2017 WL 825196, at *4-6.

For these reasons, this matter is remanded for consideration of all of Plaintiff's medically determinable mental impairments in the formulation of the RFC.

### B. Improper Rejection of the Mental Health Opinion Evidence

#### 1. The Parties' Positions

Revisiting the ALJ's discussion of the administrative findings and consultative examination opinions of the State agency mental health professionals, (*see, supra*, § V.A (second paragraph)), Plaintiff observes that the ALJ rejected this evidence due to her lack of relevant treatment without discussing supportability and consistency as required by the regulations. (Pl.'s Br., ECF No. 14, at 6 (citing 20 C.F.R. § 404.1520c(c)(1)); *see also* 20 C.F.R. § 404.1520c(c)(2)). Regarding supportability, she highlights that the ALJ failed to reference any of the evidence Dr. Diprinzo relied upon in rendering her opinion, such as her examination findings regarding

---

to consider the mild limitations he found at step two, he is incorrect. (Resp., ECF No. 15, at 8 (citing R. 21)). Notably, the ALJ observed that Plaintiff received only minimal treatment *before* he nonetheless determined that she had mild limitations in some of the broad areas of mental functioning, yet he still failed to account for them in the RFC. (R. 21). As for Plaintiff's ADLs and largely unremarkable mental examinations highlighted by the Commissioner, the ALJ never cited them as reasons for omitting any mental limitations from the RFC, and thus the Court does not consider them further. *See Schuster v. Astrue*, 879 F. Supp. 2d 461, 466 (E.D. Pa. 2012) (the Commissioner may not offer "a post-hoc rationalization" because "[t]he ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision") (quoting *Keiderling v. Astrue*, No. 07-2237, 2008 WL 2120154, at *3 (E.D. Pa. May 20, 2008)).

Plaintiff's flat, restricted and tearful affect or anxious and sad mood, or Plaintiff's reports to Dr. Diprinzo of restlessness, excessive worry, dysphoric moods, and social withdrawal. (*Id.* at 7 (citing R. 641-42, 644-45)). Plaintiff adds that the ALJ also made no reference to the internal review conducted by State agency consultants or their explanations offered in support of their findings. (*Id.* (citing R. 69-70, 81-82)). As for Dr. Foster, Plaintiff acknowledges that the ALJ further stated her opinion was not supported by her examination findings showing intact attention and concentration and only mildly impaired memory, but Plaintiff maintains that the ALJ failed to address other findings of dysthymic and overwhelmed mood or her self-reports of tearfulness and depression. (*Id.* (citing R. 26, 1234)). She accuses the ALJ of erroneously disregarding this evidence without discussing why and failing to explain how Dr. Foster's findings did not suffice to support the moderate limitations she determined. (*Id.* at 7-8 (citing *Minarsky v. Kijakazi*, 747 F. Supp. 3d 801, 815–16 (M.D. Pa. 2024); *Brownsberger v. Kijakazi*, No. 3:20-CV-01426, 2022 WL 178819, at *7 (M.D. Pa. Jan. 18, 2022); *Piper v. Saul*, No. 2:18-1450, 2020 WL 709517, at *4 (W.D. Pa. Feb. 12, 2020); *Fanelli v. Colvin*, No. 3:16-CV-1060, 2017 WL 551907, at *9 (M.D. Pa. Feb. 10, 2017))).

Turning to consistency, Plaintiff contends that the ALJ failed to acknowledge the similarity of the mental health opinion evidence, compare it to any medical evidence or relate the lack of treatment to the consistency factor and instead merely compared this evidence to the lack of other findings in the record. (*Id.* at 8-9 (citing R. 63-75)). But she insists that "an absence of evidence is not evidence of absence" and that whether physical examiners who did not evaluate her mental conditions made any relevant findings has no bearing on the persuasiveness of the opinion evidence at issue. (*Id.* at 9). Plaintiff continues that the ALJ's logic in discounting this evidence is "entirely circular" because Plaintiff's lack of mental health treatment was presumably why she was sent for consultative examinations in the first place. (*Id.*). She points

to two district court cases in which such logic was questioned, while acknowledging that in both instances the ALJ decision was nonetheless upheld because he or she had provided additional grounds. (*Id.* at 9-10 (citing *Greene v. Comm'r of Soc. Sec.*, No. 3:18 CV 1507, 2019 WL 4579223, at *8 (N.D. Ohio July 3, 2019), *report and recommendation adopted*, No. 3:18 CV 1507, 2019 WL 4573768 (N.D. Ohio Sept. 20, 2019); *Zimmer v. Colvin*, No. 15-21, 2015 WL 5178179, at *2 (W.D. Pa. Sept. 4, 2015))). Nonetheless, Plaintiff maintains that these cases counsel in favor of remand because all the mental health opinions other than Dr. Foster's were rejected solely based upon the absence of treatment. (*Id.* at 10 (citing R. 25)).

Briefly, Plaintiff submits that these errors were harmful because if the ALJ had credited the limitations set forth in the mental health opinions she would have been unable to perform her past relevant work as a human resource assistant, contrary to the ALJ's step four determination.[5] (*See id.* at 12-13 (R. 51; 20 C.F.R. § 404.1568(b); Dictionary of Occupational Titles, App'x C)).

After setting forth the applicable background law and quickly summarizing the relevant portion of the ALJ's decision, including his discussion of a September 2024 examination showing intact attention and memory, the Commissioner declares that the ALJ's evaluation of the mental health opinion evidence "was legally sufficient" and that Plaintiff's contrary position that she cannot return to past relevant work is "negate[d]" by her ability, also referenced by the ALJ, to care for four school-aged children. (Resp., ECF No. 15, at 9-10 (citing R. 21, 25-26, 69, 81, 275, 644-45, 1214, 1236-37, 2591)).

In reply, Plaintiff accuses the Commissioner of failing to respond to her arguments and

---

[5] Plaintiff also anticipates her third claim at step five, positing that the ALJ's earlier errors were harmful because an RFC restriction in accordance with the foregoing mental health evidence would have precluded the only non-obsolete job identified by the VE and relied upon the ALJ at the conclusion of the sequential analysis. (*Id.* at 13). However, as discussed below, the Court does not consider Plaintiff's third claim at this time.

instead attempting "to drum up evidence" that he believes would otherwise meet the substantial evidence standard, even though making that showing would not excuse the ALJ's circular reasoning or noncompliance with the SSA's own regulations requiring discussion of supportability and consistency. (Reply, ECF No. 16, at 1-2 (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546 (6th Cir. 2004); *Bovell v. Kijakazi*, No. CV 22-654, 2023 WL 3059863, at *5 (E.D. Pa. Apr. 24, 2023); *Long v. Comm'r of Soc. Sec.*, No. 1:20-CV-1490, 2021 WL 2530216, at *5 (N.D. Ohio June 21, 2021))). Thus, Plaintiff casts the Commissioner's response as a mere "attempt to distract" from the ALJ's errors. (*Id.* at *2 (citing *Thomas v. Kijakazi*, No. 21-CV-3547, 2022 WL 17880922, at *11 (E.D. Pa. Dec. 22, 2022))). She also repeats her arguments regarding the harmfulness of the ALJ's errors. (*Id.* at 4 (citations omitted)).

**2. Analysis**

The Commissioner modified Social Security's regulations in 2017, changing the way ALJs evaluate medical evidence. The prior regulations, governing claims filed before March 27, 2017, divided medical sources into three categories: treating, examining, and non-examining. *See* 20 C.F.R. § 404.1527(c). ALJs were to weigh each medical opinion and could sometimes afford controlling weight to opinions from treating sources. *See id.*

Under the new regulations, ALJs do not place medical sources into these categories and can no longer afford controlling weight to any opinion. *See id.* § 404.1520c(c). Instead, ALJs now evaluate the persuasiveness of each medical opinion and each prior administrative medical finding. *See id.* Five factors determine persuasiveness: (1) supportability; (2) consistency; (3) relationship with the claimant, including length, purpose, and extent of the treatment relationship, as well as frequency of examinations and whether the medical source examined the claimant firsthand; (4) specialization; and (5) other factors, like "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability

program's policies and evidentiary requirements." *See id.* Supportability and consistency are the most important factors. *Id.* § 404.1520c(b)(2). ALJs need not explain their determinations regarding the other factors, but they must discuss supportability and consistency. *Id.*

Regarding supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* § 404.1520c(c)(1). Regarding consistency, "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* § 404.1520c(c)(1).

It is well established that an ALJ is free to reject a medical source opinion but in so doing must indicate why evidence was rejected so that a reviewing court can determine whether "significant probative evidence was not credited or simply ignored." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981). Although the ALJ need not discuss "every tidbit of evidence included in the record," *Hur v. Barnhart*, 94 F. App'x 130, 133 (3d Cir. 2004), he or she must consider all pertinent medical and non-medical evidence and "explain [any] conciliations and rejections." *Burnett*, 220 F.3d at 122. Accordingly, "[t]he ALJ must provide a 'discussion of the evidence' and an 'explanation of reasoning' for [her] conclusion sufficient to enable meaningful judicial review." *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009) (quoting *Burnett*, 220 F.3d at 120).

**a. Drs. Franks, Saunders and Diprinzo**

Regarding Drs. Franks' and Saunders' administrative findings and Dr. Diprinzo's opinion, the ALJ stated that "these opinions are not persuasive because they are not consistent with the

claimant's treatment records, which fail to document any mental health treatment during the period at issue." (R. 25 (citing Exs. 1A, 3A, 12F)). Plaintiff cites *dicta* from two non-binding cases that accorded at least some "initial logical appeal" to her contention, also lodged therein, that it is circular for the SSA to order a consultative examination opinion due to a lack of treatment records but then reject that opinion on those same grounds. (Resp., ECF No. 14, at 9 (citing *Greene*, 2019 WL 4579223, at *8; *Zimmer*, 2015 WL 5178179, at *2)); *see also Greene*, 2019 WL 4579223, at *8 (denying remand); *Zimmer*, 2015 WL 5178179, at *2 (denying remand). Nonetheless, it is well-settled that no or even "[a] conservative treatment plan tends to negate a claim of disability . . . ." *Morales v. Comm'r of Soc. Sec.*, 799 F. App'x 672, 676-77 (11th Cir. 2020). Thus, even if Plaintiff's failure to seek mental health treatment does not prove that she had no mental health problems, or in her words, "is not evidence of absence," (Pl.'s Br., ECF No. 14, at 9), it does suggest that "the intensity and limiting effects of her symptoms" were circumscribed. *Morales*, 799 F. App'x at 676. As for her contention that the ALJ relied upon a "lack of findings from physical examiners (who did not evaluate Plaintiff's mental conditions)," (Pl.'s Br., ECF No. 14, at 9), she is simply incorrect. The ALJ did not cite these records to show a lack of mental health conditions but to show a lack of "any mental health treatment during the period at issue," (R. 25-26), with the attendant implications for the severity and restricting effects of any conditions that did exist. *See Morales*, 799 F. App'x at 676. For these reasons, the ALJ did not err in finding Drs. Franks' and Saunders' administrative findings and Dr. Diprinzo's opinion inconsistent with the record.

Supportability, however, presents a different story. Although the absence of relevant treatment runs counter to finding the claimant disabled, it does not permit the ALJ to forego the required analysis and articulation. Pursuant to 20 C.F.R. § 404.1520c(b)(2), the SSA has made the following commitment to SSDI applicants: "we will explain how we considered the

supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision." That commitment was not kept here by the ALJ, who gave no indication that he considered whether these three opinions were well-supported or not. (R. 25). Therefore, this matter must be remanded for further consideration of that factor.

**b. Dr. Foster**

The ALJ provided the same foregoing analysis of the persuasiveness of Dr. Foster's opinion, held adequate here as to consistency, but he additionally explained that it was unpersuasive because it was "not consistent[6] with her examination findings, including only mildly impaired memory and intact attention and concentration." (R. 26 (citing Ex. 24F/3)). Plaintiff complains that the ALJ's "fail[ure] to reference the other findings noted by Dr. Forster" amounts to "cherry-picking," (Pl.'s Br., ECF No. 14, at 7-8 (citations omitted)), but this Court disagrees. As Plaintiff notes, cherry-picking occurs "where the evaluator mentions only isolated facts that militate against the finding of disability and ignores much other evidence that points another way," *see Fanelli*, 2017 WL 551907, at *9; (*see also* Pl.'s Br., ECF No. 14, at 8 (citing *Fanelli*)), but that is not what happened here. In addition to Dr. Foster's examination findings of a largely functional memory and intact attention and concentration, highlighted by the ALJ in his decision, she also found Plaintiff had an appropriate and well-groomed appearance, fluent and clear speech with adequate expressive and receptive language, coherent and goal-directed

[6] Despite the ALJ's word choice, it is clear that he was referencing supportability here, as acknowledged by Plaintiff. (*See* Pl.'s Br., ECF No. 14, at 7 (describing the quoted statement above as "at least attempt[ing] to provide some *supportability* analysis") (emphasis added)). Supportability looks to "the objective medical evidence and supporting explanations presented *by a medical source*" to substantiate his or her opinion. 20 C.F.R. § 404.1520c(c)(2) (emphasis added). Notwithstanding the reference to "consistency," the ALJ rejected Dr. Foster's opinion in part based upon "her examination findings," i.e., the lack of support within her own objective medical evidence relating to Plaintiff. (R. 26).

thought processes with no evidence of hallucinations/delusions or paranoia, full orientation, average to above average cognitive functioning with appropriate fund of information, and good insight. (R. 1234). It is true that Dr. Foster further found that Plaintiff had a tearful and depressed affect and dysthymic and overwhelmed mood, and that Plaintiff self-reported similar symptoms to her, (*id.*), but "[t]here is no requirement that the ALJ discuss in his opinion every tidbit of evidence included in the record." *Hur v. Barnhart*, 94 F. App'x 130, 133 (3d Cir. 2004). On the whole, Dr. Foster's largely normal examination findings constitute substantial evidence upon which the ALJ could rely in discounting her opinion due to a lack of supportability.

Finally, Petitioner contends that the ALJ failed to explain how Dr. Foster's findings did not suffice to support the "modest" limitations to which she opined. (Pl.'s Br., ECF No. 14, at 8 (citations omitted)). He cites two cases purportedly rejecting as inadequate similar language to that used by the ALJ here when he discounted this opinion, but both are distinguishable. (*Id.* (citations omitted)). In *Brownsberger*, the ALJ merely stated that the medical source acknowledged the need for "a physical function capacity report in order to accurately render such opinion" but failed to complete one, with no attempt whatsoever by the ALJ to address either the supportability or consistency of that evidence. 2022 WL 178819, at *7 (internal citation omitted). In *Minarsky*, the ALJ wrote only that a nurse's opinion "was not supported by her treatment notes, which documented limited positive clinical findings . . . ." 747 F. Supp. 3d at 815-16. In contrast to these cases, here the ALJ specifically identified at least some of the clinical findings (i.e., intact attention and concentration and only mildly limited memory) undermining the opinion at issue, (R. 26), thus establishing "an accurate and logical bridge between the evidence and the result." *Gamret v. Colvin*, 994 F. Supp. 2d 695, 700 (W.D. Pa. 2014). Because the ALJ's discussion allows this Court "to trace the path" of his reasoning, 82 Fed. Reg. 5844-01, at 5858, it declines to remand this matter based on his treatment of Dr. Foster's opinion.

### C. Jobs Identified by the VE at Step Five

In addition, Plaintiff argues that the jobs the VE identified and the ALJ relied upon at Step five are either obsolete or precluded by the mental health opinion evidence, properly considered. (Pl.'s Br., ECF No. 14, at 13-16). Because I remand this matter for further consideration of all Plaintiff's mental impairments, as well as the supportability of Drs. Franks' and Saunders' administrative findings and Dr. Diprinzo's opinion, which may in turn affect the ALJ's determination regarding Plaintiff's RFC and thus the hypothetical posed to the VE, I will not address Plaintiff's argument on this issue. *See Steininger v. Barnhart*, No. 04-5383, 2005 WL 2077375, at *4 (E.D. Pa. Aug, 24, 2005) (not addressing additional arguments because the ALJ may reverse his findings after remand). It is possible that, on remand, the ALJ may reach different conclusions as to the RFC, resulting in an entirely new hypothetical to the VE and no or different jobs identified by him or her in response to it.

## VI. CONCLUSION

For the reasons set forth above, Plaintiff's request for review is **GRANTED**, and the matter is remanded for further proceedings consistent with this memorandum.

BY THE COURT:

/s/ Lynne A. Sitarski
LYNNE A. SITARSKI
United States Magistrate Judge